**In re KRANZ CANDY CO.**

**ROBINS v. KLEIN.**

**No. 10974.**

United States Court of Appeals
Seventh Circuit.

July 16, 1954.

Alvin G. Hubbard, Chicago, Ill., Dominick Varraveto, Jr., Chicago, Ill., for appellant.

Emmett McCarthy, George R. Lyon, Chicago, Ill., Gregory J. Scheurich, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges

DUFFY, Circuit Judge.

This as an appeal from an order of the district court dated May 22, 1953, approving and confirming an order of Referee in Bankruptcy Streeter dated December 3, 1952, denying and dismissing a petition for reclamation filed by Sam Robins doing business as Cavell Candy Company. Kranz Candy Company, incorporated in 1948 under the laws of Illinois, was engaged in the manufacture and sale of candies in Chicago. It was adjudicated a voluntary bankrupt on January 16, 1952. .

A series of transactions, beginning in April, 1950, and ending in November of the same year are here in question. In April, 1950, Riggi Candy Company, an Illinois corporation, was the sole stockholder of bankrupt, owning its entire authorized capital stock of 250 shares of no par common. Riggi was managed and controlled by one Harry Rachlin, who also was bankrupt's vice president and treasurer, and a member of its board of directors. The other board members were Ann M. Kinsch and Calvin Rutt, who were bankrupt's president and secretary, respectively.

On April 19, 1950, Riggi entered into an agreement with Sam Robins, a candy manufacturer, doing business as Cavell Candy Company, located at Detroit, Michigan. On that date Riggi, by Harry Rachlin, wrote a letter addressed to Cavell Candy Company at Detroit as follows:

"This will confirm our agreement reached to day regarding the attached list of machinery and raw materials on the premises of the Kranz Candy Company, 659 W. Hobbie Street.

"We are selling all this equipment and material to you with the right to use the Kranz name on the findings, cartons, bags, etc., on the attached list for $5,000.00, receipt of which is hereby acknowledged."

The "attached list" mentioned in the letter consisted of a seven-page type-

written inventory of machinery and raw materials. It was established that as a part of the agreement between Riggi and Sam Robins, the latter cancelled an indebtedness of $7,000 principal and approximately $500 interest owed by Riggi to Robins, pursuant to the terms of a $10,000 promissory note dated July 2, 1948.

Shortly after April 19, 1950, Robins was suddenly stricken with a serious illness. He was in a coma for approximately 30 days, and was hospitalized for a considerable period thereafter.

Rachlin did not inform Ann Kinsch as to the transaction between Riggi and Robins. Instead he arranged for Riggi to sell 250 shares of bankrupt's common stock (its entire authorized capital stock) to Ann Kinsch and to one Frank Sloup. Extracts from the formal agreement dated June 9, 1950, are as follows:

"For and in consideration of the sum of Seventeen Thousand Five Hundred and 00/100 ($17,500.00) Dollars * * * to be paid Riggi as follows: Five Thousand ($5,000.-00) Dollars to be paid concurrently herewith by the cancellation of the $5,000.00 credit in favor of Ann Kinsch from Riggi, and the balance of Twelve Thousand Five Hundred and 00/100 ($12,500.00) Dollars to be paid at the rate of one-quarter cent per pound for all candy produced and sold by Kranz Candy Company, * * * Riggi has granted, bargained, sold and delivered, and, by these presents does grant, bargain, sell and deliver, unto the Purchasers, jointly, two hundred fifty (250) common shares, having no par value, of the Kranz Candy Co., an Illinois corporation.

\* \* \* \* \* \*

"The balance of Twelve Thousand Five Hundred and 00/100 ($12,500.-00) Dollars is to be evidenced and secured by a collateral note to be executed and delivered concurrently herewith by the Purchasers, * *. The said collateral note shall be se-cured with two hundred fifty (250) common shares of Kranz Candy Co. * * * and all officers and directors of the Kranz Candy Co. * * shall execute and deliver their written resignations as officers and directors of the Kranz Candy Company * * *, which resignations shall be effective in the event of a default in the terms of said collateral note. * * *

\* \* \* \* \* \*

"It is understood that said collateral note shall exempt the Purchasers from personal liability in the event of default, and that Riggi shall look solely to the collateral security for the payment of said note."

Then followed two paragraphs whereby Riggi warranted that the Kranz Candy Company owned the machinery, equipment and raw material as set forth in attached exhibits. Riggi also agreed to assign all monies due and owing Riggi from Kranz Candy Company, so that the purchasers would be the owners thereof.

The purchasers agreed that they would operate Kranz Candy Company as a going business until the collateral note was paid in full.

As provided in the agreement Ann Kinsch and Frank Sloup delivered to Riggi their collateral note for $12,500, and also their written resignations as officers and directors of the bankrupt, to be effective upon any default in the terms of the collateral note. The note and the agreement appear to be consistent, except that the note stipulates that each monthly payment shall be not less than $250.

Less than a week before the first payment of $250 was due, Ann Kinsch and Frank Sloup were interviewed by attorneys representing Robins, who had ascertained that the property he had purchased from Riggi on April 19, 1950, had been warranted in the agreement between Riggi and Kinsch and Sloup as belonging to and owned by Kranz Candy Company, free and clear of any liens.

Negotiations extending over several months ensued in an attempt to settle the conflicting claims. It was of importance to both Riggi and to Kranz Candy Company to settle Robins' claim if possible, and thus avoid litigation. All parties apparently agreed that the best solution was to arrange for a payment of $12,500 to Robins. To this end Riggi paid Robins $5,000, thus reimbursing him for the cash outlay involved in the April 19, 1950, transaction. However, Robins was apparently unwilling to accept the overdue promissory note, and it was arranged that Kinsch and Sloup, instead of paying monthly installments of $250 to Riggi under the terms of the collateral note, would make such payments to Robins. Riggi thereupon endorsed the collateral note over to Robins, and executed a written guarantee for payment of the note to the extent of $7,500 principal, and interest at 5%, from maturity. Also, certificates for the 250 shares of common no par stock of Kranz Candy Company were delivered to Robins as collateral security.

On October 19, 1950, Kranz Candy Company purchased from Kinsch and Sloup 62½ shares of its own capital stock for $200 per share. Simultaneously Kranz Candy Company executed and delivered to Kinsch and Sloup a note in the sum of $12,500 and a chattel mortgage to secure the same. The chattel mortgage covered the same machinery and equipment which had been included in the transaction of April 19, 1950, between Riggi and Robins. Kinsch and Sloup then endorsed and delivered to Robins the note and chattel mortgage as additional security to secure the payments to Robins under the agreement between Kinsch and Sloup and Riggi. The chattel mortgage was timely placed of record with the Recorder of Deeds of Cook County, Illinois. Robins received $3,500 in monthly payments prior to the date of the bankrupt's adjudication.

The evidence taken before the referee established the foregoing facts and in addition thereto that the Kranz Candy Company sustained losses in the conduct of its business and was insolvent at the time of its adjudication; also that the net assets of Kranz Candy Company were less than its stated capital at the time when the chattel mortage was executed on October 19, 1950, in connection with its purchase of 62½ shares of its capital stock.

There is no real conflict in the evidence. The essential facts are established by the documents received in evidence. The reclamation petitioner relies entirely upon the chattel mortgage together with the chattel mortgage note, asserting that the mortgage is a valid lien upon the chattels of the bankrupt, and prior to any claims of creditors or of the trustee in bankruptcy.

The referee's conclusions of law included the following: The transaction whereby Kinsch and Sloup sold 62½ shares of bankrupt's stock to it was not an arm's length transaction, was not entered into in good faith, was for an excessive price, and served no valid corporate purpose; that the bankrupt received no adequate consideration for its note and chattel mortgage; and that said agreement, note and chattel mortgage of the bankrupt was in fraud of its creditors.

The referee also concluded:

"9. That at the time of the transaction between Kinsch and Sloup and the bankrupt for the sale and purchase of the sixty-two and a half shares in the bankrupt, the net assets of the bankrupt were less than its stated capital and the net assets were thereby further reduced, and the transaction was illegal within the meaning and contemplation of Paragraph 6 of the Business Corporation Act of Illinois.

"10. That the bankrupt was insolvent at the time of its adjudication in bankruptcy and has remained so and the payment of the note securing the chattel mortgage of petitioner would be in fraud of the creditors of the bankrupt."

The referee also held the chattel note and mortgage to be invalid.

The referee's order was dated December 3, 1952. On December 11, 1952, Robins petitioned for a rehearing. On January 7, 1953, the referee filed supplemental findings to his December 3, 1952, order, which included:

"1. That on October 19, 1950, the date of the execution of the note and chattel mortgage in question, the petitioner had no right, title or interest in or to the machinery and equipment of the Bankrupt Corporation; any interest he may have acquired by virtue of his agreement with Riggi Candy Company on April 19, 1950, having been surrendered by his acceptance of the return of his $5,000.00 and by his acceptance of the assignment from Riggi Candy Company of the collateral note in the amount of $12,500.00, dated June 9, 1950, running from Ann M. Kinsch and Frank J. Sloup to Riggi Candy Company, an Illinois corporation, payment of which was guaranteed to petitioner by Riggi Candy Company to the extent of $7,500.00.

"2. That at no time during the period from April 19, 1950, to the date the petition in bankruptcy was filed herein did the petitioner exercise any rights of ownership on the chattels in question, but at all times knowingly permitted the bankrupt to remain clothed with all of the indicia of ownership to said chattels, including knowingly permitting the bankrupt to remain in the sole and exclusive possession of said chattels and using and operating them in the conduct of its business and permitting the bankrupt to hold itself out to be owner of said chattels. That such conduct on the part of the petitioner constitutes a fraud on creditors.

"3. That the prayer of the amended reclamation petition prays only that the chattel mortgage in question be declared a good and valid lien against the assets of the bankrupt and that the petitioner's claim of ownership to the assets covered by said chattel mortgage is inconsistent with said mortgage and is inconsistent with the prayer of said petition.

"4. That the petitioner received payments on the note in question totalling $3,500.00."

■ The conclusion of the referee, approved by the district court, to the effect that because bankrupt's net assets were less than its stated capital, the transaction which included the execution of the chattel mortgage was illegal under Paragraph 6, Illinois Business Corporation Act,[1] is in our view correct. This in itself is sufficient to require affirmance of the district court's order which is before us on this appeal.

■ Reclamation petitioner also contends that there are no creditors of bankrupt whose claims accrued before the date of the chattel mortgage, and argues that the trustee in bankruptcy is in no better legal position than the creditors whom he represents. Assuming *arguendo* that no creditor's claim extends back to October 19, 1950, this would not affect the rights of the trustee. Section 70, sub. c of the Bankruptcy Act, 11 U.S. C.A. § 110, sub. c, provides in relevant part: "The trustee, as to all property, * * * at the date of bankruptcy, shall be deemed vested as of such date with all

1. Paragraph 6, Illinois Business Corporation Act, Ch. 32, § 157.6, Ill.Rev.Stat., 1953, provides: "A corporation shall have power to purchase, take, receive, or otherwise acquire, hold, own, pledge, transfer, or otherwise dispose of its own shares, provided that it shall not purchase, either directly or indirectly, its own shares when its net assets are less than the sum of its stated capital, its paid-in surplus, any surplus arising from unrealized appreciation in value or revalution of its assets and any surplus arising from surrender to the corporation of any of its shares, or when by so doing its net assets would be reduced below such sum."

the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." It should be noted that the trustee's rights are not derivative; they are not the rights of any existing creditor to which the trustee is subrogated. In re Consorto Const. Co., Inc., 3 Cir., 212 F.2d 676, 678; McKay v. Trusco Finance Co. of Montgomery, Ala., 5 Cir., 198 F.2d 431, 433.

We have considered other contentions made by the reclamation petitioner, but have concluded that they are without merit.

The order of the district court is Affirmed.